UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY FOX,

     Plaintiff,                               Case No. 16-cv-10462
v.                                        Hon. Matthew F. Leitman

NEXTEER AUTOMOTIVE CORP.,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #13)

In this action, Plaintiff Ashley Fox alleges that Defendant Nexteer Automotive Corporation interfered with her rights under the Family and Medical Leave Act, 29 U.S.C. 2601 *et seq.* (the "FMLA"), retaliated against her for exercising her FMLA rights, and discriminated against her on the basis of her sex and pregnancy in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* (the "ELCRA"). Nexteer has now moved for summary judgment. For the reasons explained below, none of Fox's claims are viable, and the Court therefore **GRANTS** Nexteer's motion.

### I

### A

Fox worked for Nexteer from July 19, 2010, until February 25, 2013. (*See* Fox Dep. at 12, 64, ECF #21-2 at Pg. ID 258, 269.) She began her employment as a parts

sorter but later transferred to Nexteer's heat treatment department. (*See id.* at 14-18, ECF #21-2 at Pg. ID 259.)

During Fox's employment with Nexteer, the company had a no-fault attendance policy. (*See* Nexteer Collective Bargaining Agreement, ECF #21-3 at Pg. ID 359-60.) Under this policy, Nexteer assessed points against employees for absences and tardies, and employees were subject to termination if they accumulated eighteen points within a rolling twelve-month period. (*See id.*) However, Nexteer did not assess points for certain types of absences, including absences for FMLA leave or short-term disability leave. (*See id.*; Denny Getgood Dep. at 46-47, ECF #21-8 at Pg. ID 498.)

**B**

On October 15, 2012, Fox took a leave of absence related to her pregnancy. (*See* Fox Dep. at 38-39, ECF #21-2 at Pg. ID 264.) This absence qualified for paid leave under Nexteer's short-term disability plan. MetLife Disability, the administrator of that plan, approved Fox for short-term disability leave from October 16, 2012, to December 27, 2012, and MetLife notified Fox of that approval in writing. (*See id.* at 49-50, ECF #21-2 at Pg. ID 265-66; MetLife Maternity Approval Letter, ECF #21-5.)

Fox's pregnancy leave was also covered under the FMLA, and Nexteer chose to treat her leave from October 16, 2012, to December 27, 2012, as *both* short-term

disability leave *and* FMLA leave. (*See* Getgood Dep. at 84-85, ECF #21-8 at Pg. ID 503-504.) The FMLA's implementing regulations and Nexteer's union contract authorized Nexteer to treat Fox's leave in this manner. (*See* 29 C.F.R. § 825.207(d)[1]; Getgood Dep. at 84-85, ECF #21-8 at Pg. ID 503-04.) The FMLA's implementing regulations required Nexteer to provide Fox with a written "designation notice" stating that her short-term disability leave would "be counted as FMLA leave," 29 C.F.R. § 825.300(d)(1), but Nexteer did not give Fox this notice. (*See* Fox Dep. at 102, ECF #22-2 at Pg. ID 655.) There is no evidence in the record concerning how or why Nexteer failed to provide that designation notice. Because Nexteer did not provide the required notice, Fox was unaware that Nexteer was counting her pregnancy leave against her allotment of FMLA leave. (*See id.*)

According to Nexteer, Fox exhausted her twelve-week allotment of FMLA leave for calendar year 2012 before December 27, 2012 – the last day of her scheduled leave.[2] (*See* Getgood Dep. at 34, ECF #21-8 at Pg. ID 496.)

---

[1] In relevant part, this regulation provides: "Leave taken pursuant to a disability plan would be considered FMLA leave for a serious health condition and counted in the leave entitled permitted under the FMLA …. In such case, the employer may designate the leave as FMLA leave and count the leave against the employee's FMLA entitlement." 29 C.F.R. § 825.207(d).

[2] Fox utilized a portion of her twelve-week FMLA allotment earlier in 2012 to care for her oldest daughter. (*See* Fox Dep. at 27-29, ECF #21-2 at Pg. ID 262.)

## C

Fox was scheduled to return from her leave on January 2, 2013.[3] (*See id.* at 39, ECF #21-2 at Pg. ID 264.) Under Nexteer's policies, Fox could not return to work from her medical-related leave without submitting documentation from a physician indicating that she was fit to return. (*See* Phillip Moore Dep. at 43-45, ECF #21-7 at Pg. ID 484-85; Getgood Dep. at 35, ECF #21-8 at Pg. ID 496.)

Fox knew that she needed clearance from her physician (*see* Fox Dep. at 51, ECF #21-2 at Pg. ID 266), and she scheduled an appointment to see him on January 2, 2013. (*See id.* at 39, ECF #21-2 at Pg. ID 264.) She did not secure an earlier appointment because the doctor's office was closed "a couple extra days" due to the holidays. (*Id.*) However, Fox's physician was unable to examine her on January 2, 2013, because Fox had started her menstrual period. (*See id.*) Fox rescheduled her appointment for January 16, 2013. (*See id.*) Because Fox did not secure a return-to-work authorization from her physician, she did not return to work on January 2, 2013. (*See id.* at 50-53, ECF #21-2 at Pg. ID 266.)

There is no evidence in the record that Fox notified Nexteer that she would not be returning to work on January 2, 2013 as originally scheduled. Instead of telling Nexteer that she would not be returning as scheduled, Fox informed MetLife

---

[3] While Fox's leave ended on December 27, 2012, she was not scheduled to work between December 27, 2012, and January 2, 2013, because Nexteer was on its holiday break. (*See* Fox Dep. at 39, ECF #21-2 at Pg. ID 264.)

that her postpartum follow-up appointment had been rescheduled. (*See id.* at 52, ECF #21-2 at Pg. ID 266.)

At around this same time, Fox contacted her union representative, Phillip Moore, and told him about her situation. (*See* Moore Dep. 46-47, ECF #21-7 at Pg. ID 485.) On January 12, 2013 – ten days after Fox was due to return to work – Moore emailed Denny Getgood, an employee in Nexteer's human resources department, to tell him that:

> Ashley Fox did attempt to see [a doctor] to get a return to work date, but her [doctor] is on vacation. She is working on that [and] she is also requesting to update her FMLA for this year.

(*See* Moore email to Getgood, ECF #21-8 at Pg. ID 505; Getgood Dep. at 38-40, ECF #21-8 at Pg. ID 497.)

After receiving Moore's email, Getgood investigated whether Fox was eligible for FMLA leave in January 2013. (*See* Getgood Dep. at 38-40, ECF #21-8 at Pg. ID 497.) Getgood determined that Fox was ineligible for FMLA benefits at that time because she had not worked 1,250 hours in the preceding twelve months.[4] (*See id.*; Fox Time Card, ECF #21-8 at Pg. 506.) On January 14, 2013, Getgood

---

[4] The FMLA defines an "eligible employee" as an employee who has been employed "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(ii). The FMLA implementing regulations clarify that an employee is eligible for FMLA benefits only if she has been "employed for at least 1,250 hours of service during the 12-month period *immediately preceding the commencement of the leave.*" 29 C.F.R. § 825.110(a)(2) (emphasis added).

informed Moore by email that Fox "hasn't worked 1250 hours in the last year. She would not qualify for FMLA." (Getgood email to Moore, ECF #21-8 at Pg. ID 505; Getgood Dep. at 38-40, ECF #21-8 at Pg. ID 497.)

## D

On January 16, 2013, Fox obtained a return-to-work authorization from her doctor. She reported to work that evening – fifteen days after her scheduled return date.[5] (*See* Fox Dep. at 50-54, ECF #21-2 at Pg. ID 266-67.)

Nexteer informed Fox that she would be assessed points under Nexteer's attendance policy for all of the work days she missed in January – *i.e.*, for the days between her scheduled return to work date of January 2 and her actual return date of January 17 – unless MetLife determined that those absences were covered under Nexteer's short-term disability policy. (*See id.* at 54-55, ECF #21-2 at Pg. ID 267.) Nexteer determined that Fox could not avoid attendance points for those absences under the FMLA because she was not eligible for FMLA leave at that time. (*See* Getgood Dep. at 38, ECF #21-8 at Pg. ID 497.)

In order to bring her January absences within the coverage of Nexteer's short-term disability policy, Fox needed to provide MetLife with medical documentation indicating that she was unable to work on the dates in question. (*See* Alyssa

---

[5] Although Fox technically returned to work on the evening of January 16, that shift was for January 17 under Nexteer's payroll policies. (*See* Fox Dep. at 53, ECF #21-2 at Pg. ID 266.) Thus, Fox officially returned to work on January 17.

McWilliams Dep. at 28-29, ECF #21-9 at Pg. ID 516-17; MetLife email to Nexteer, ECF #21-9 at Pg. ID 521.) As of January 17, 2013, Fox had not submitted any documentation to MetLife. (*See* Fox Dep. at 52-54, ECF #21-2 at Pg. ID 266-67.)

On January 17, 2013, and February 1, 2013, Getgood sent letters to Fox informing her that MetLife had "not yet received certification from [her] treating physician to approve [short-term disability leave] for December 28, 2012 through January 17, 2013." (Getgood Letters, ECF ## 21-5, 21-6.) Getgood told Fox that the "[f]ailure to get this approval within one week from the date of [the] letter will result in point generation for the dates [she] missed work." (*Id.*)

On February 12, 2013, MetLife notified Nexteer that it had not approved Fox for short-term disability benefits from December 27, 2012, to January 16, 2013. MetLife explained that Fox needed to submit detailed medical records such as "treatment notes" that "support her disability" for those dates and that she had not done so. (McWilliams Dep. at 28-29, ECF #21-9 at Pg. ID 516-17; MetLife email to Nexteer, ECF #21-9 at Pg. ID 521.)

On February 14, 2013, Fox secured a letter from her physician explaining that she (Fox) had needed to reschedule her postpartum follow-up appointment due to her menstrual period. (*See* Fox Dep. at 59-60, ECF #21-2 at Pg. ID 268; Doctor's Letter, ECF #21-5 at Pg. ID 453.) However, the letter did not say that Fox had been unable to work or disabled on the days she missed. (*See id.*) MetLife did not accept

this letter as proof of disability and did not approve short-term disability leave for Fox's absences in January 2013. (*See* Fox Dep. at 63, ECF #21-2 at Pg. ID 269.)

Nexteer then assessed attendance points against Fox for her January 2013 absences. (*See id.* at 63-64, ECF #21-2 at Pg. ID 269; Discharge Notice, ECF #21-5.) Once those points were assessed, Fox had twenty-eight attendance points on her record – substantially more than the eighteen-point threshold for termination under Nexteer's attendance policy. (*See* Fox Dep. at 63-64, ECF #21-2 at Pg. ID 269.) Nexteer fired Fox on February 25, 2013, because she "reached the level of 28 points" under the Attendance Policy. (Discharge Notice, ECF #21-5.)

Immediately after Nexteer terminated Fox's employment, she complained to her union representatives (*see* Fox Dep. at 66, ECF #21-2 at Pg. ID 270), and it appears that she also completed a grievance form contesting her discharge at that time. (*See* Employee Grievance Form, ECF #21-5 at Pg. ID 456.) Fox's union ultimately agreed with Nexteer that the assessment of attendance points against Fox for the January 2013 dates was "just," and for that reason it settled her grievance. (*Id.*) To this day, Moore, Fox's union representative, believes that her firing was "justified." (Moore Dep. at 68, ECF #21-7 at Pg. ID 486.)

**E**

On February 9, 2016, Fox filed this action. In her three-count Amended Complaint, Fox alleges that Nexteer retaliated against her in violation of the FMLA,

29 U.S.C. § 2615(a)(2), interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1), and discriminated against her because of her sex and pregnancy in violation of the ELCRA. (*See* Am. Compl., ECF #15.)  Nexteer moved for summary judgment on December 19, 2016. (*See* ECF #21.)  Fox responded on January 10, 2017. (*See* ECF #22.)  Nexteer replied on January 23, 2017. (*See* ECF #23.)  The Court held a hearing on Nexteer's motion for summary judgment on April 24, 2017.

## II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52.  Indeed, "[c]redibility determinations, the weighing of the evidence and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

# III

## A

"The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various purposes specified in the statute, including the employee's own 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Bryson v. Regis Corp.,* 498 F.3d 561, 569-70 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)). "At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.* (citing 29 U.S.C. § 2614(a)(1)).

There are two theories under which an employer can be found liable for violating the FMLA:

> The 'entitlement' or 'interference' theory arises from § 2615(a)(1), which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter,' and from § 2614(a)(1), which provides that 'any eligible employee who takes leave ... shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position.' The 'retaliation' or 'discrimination' theory arises from § 2615(a)(2), which provides that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'

*Arban v. W. Pub. Corp.,* 345 F.3d 390, 400-01 (6th Cir. 2003). In her Amended Complaint, Fox brings a claim under the interference theory and a claim under the retaliation theory. Both claims fail.

**B**

**1**

"Under the FMLA interference theory, if an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer. Interference occurs when an employer shortchanges an employee's leave time, denies reinstatement, or otherwise interferes with an employee's substantive FMLA rights." *Marshall v. The Rawlings Company LLC*, 854 F.3d 368, 384 (6th Cir. 2017) (quoting *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274 (6th Cir. 2012)) (internal citations and quotation marks omitted).

Fox alleges that Nexteer interfered with her FMLA rights in the following ways:

- By failing to provide her with an FMLA eligibility notice[6] (stating whether she was eligible for FMLA leave) and designation notice (stating that Nexteer was designating her pregnancy leave as FMLA leave) when

---

[6] An "eligibility notice" informs the employee of "her eligibility to take FMLA leave." 29 C.F.R. § 825.300(b)(1). An employer is required to send such a notice "within five business days, absent extenuating circumstances," of "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." *Id.*

her leave began in October 2012. (*See* Am. Compl. at ¶¶ 42-43, ECF #15 at Pg. ID 124-25.)

- By requiring her to re-certify her eligibility for FMLA leave at the beginning of 2013. Fox contends that at that time she was in the midst of a continuous and uninterrupted FMLA leave and that it was thus improper to re-evaluate her FMLA eligibility. (*See id.* at ¶45, ECF #15 at Pg. ID 125.)

- By failing to give her either an eligibility notice or oral notice in January 2013 stating that she was no longer eligible for FMLA leave. (*See id.* at ¶¶ 47-48, ECF #15 at Pg. ID 125.)

- By discontinuing her FMLA leave in January 2013 after determining that she was no longer eligible for such leave. (*See id.* at ¶50, ECF #15 at Pg. ID 125-26.)

- By assessing attendance points for the January absences and then terminating her employment based upon those points without giving her advance notice that the January absences were not FMLA-qualifying. (*See id.* at ¶¶ 51-54, ECF #15 at Pg. ID 126.)

As explained below, Fox's interference claim is barred by the FMLA's statute of limitations.

## 2

The FMLA contains its own statute of limitations. It provides:

(1) In general

Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.

12

(2) Willful violation

In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

29 U.S.C. § 2617(c).

The Court will assume that the "last event constituting" Nexteer's alleged interference was the date on which Nexteer fired Fox – February 25, 2013 (the "Last Event Date"). Fox filed suit on February 9, 2016, nearly three years after the Last Event Date. Therefore, Fox's FMLA interference claim is barred by the statute of limitations unless Fox establishes that Nexteer's alleged FMLA interference was "willful." *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir. 2005) (holding that FMLA plaintiff "was clearly required to show willfulness in order to get the benefit of the FMLA's extended three-year statute of limitations for willful violations."). She has failed to do so.

"To prove willfulness, [Fox] would need to show that [Nexteer] 'acted with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements.'" *Katoula v. Detroit Entertainment, LLC*, 557 Fed. App'x 496, 498 (6th Cir. 2014) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). "Mere negligence is not enough." *Woida v. Genesys Regional Medical Center*, 4 F.Supp.3d 880, 893 (E.D. Mich. 2014) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Fox argues that certain acts and omissions by Getgood demonstrate that Nexteer willfully interfered with her FMLA rights. Fox contends that Getgood had "advanced training and knowledge regarding FMLA procedures." (Pl.'s Resp. Br., ECF #22 at Pg. ID 626.) She argues that despite this training, Getgood "deliberately fail[ed]" to provide her with the required eligibility and designation notices when she commenced her pregnancy leave in October 2012; "deliberately" chose to re-evaluate her FMLA eligibility in January 2013 even though no re-evaluation should have been done at that time; "deliberately fail[ed]" to give her an eligibility notice in January 2013; and then terminated her employment for taking FMLA leave to which she was entitled. (*Id.*) To Fox, this all adds up to willful interference.

Fox's argument suffers from several flaws. First, Fox has not presented any evidence that Getgood was responsible for (or had any connection to) Nexteer's failure to provide eligibility and designation notices to Fox when she began her leave in October 2012. He "was not there" (i.e., was not in the human resources position covering Fox's employment) at that time. (*See* Getgood Dep. at 27-28, ECF #22-4 at Pg. ID 667.) His first interaction with Fox was in 2013. (*See id*. at 6, ECF #21-8 at Pg. ID 494.)

Second, Fox has not presented any evidence that Getgood "deliberately" violated the FMLA by re-evaluating Fox's FMLA eligibility in January of 2013. Getgood re-evaluated Fox's eligibility at that time because Moore (Fox's union

representative), acting on Fox's behalf, asked Getgood to "update [Fox's] FMLA."

(Moore email to Getgood, ECF #21-8 at Pg. ID 505; Getgood Dep. at 38-40, ECF

#21-8 at Pg. ID 497.)  Simply put, Fox's own conduct initiated the re-evaluation.

Thus, even if it was improper to re-evaluate Fox's FMLA eligibility at that time (and,

the Court does not believe that it was[7]), that impropriety cannot be deemed a

"deliberate" violation of the FMLA, as Fox contends.  And even if Getgood erred

when he concluded that Fox was not eligible for FMLA leave in January 2013 (and

---

[7] Fox argues that Nexteer had no right to re-evaluate her entitlement to FMLA benefits in January 2013 because (1) the days she missed that month were part of a single, uninterrupted FMLA leave that began in October 2012 and (2) an employer may not re-determine FMLA eligibility in the middle of a such a leave. (*See* Pl.'s Resp. Br., ECF #22 at Pg. ID 631.)

However, Fox's absences from October 15, 2012, to January 17, 2013, were *not* part of a single period of FMLA leave.  Fox exhausted her 12 weeks of FMLA leave for 2012 on December 27, 2012. (*See* Getgood Dep. at 34, ECF #21-8 at Pg. ID 496; Pl.'s Resp. Br., ECF #22 at Pg. ID 619.)  Thus, as a matter of law, the FMLA leave that Fox began on October 15, 2012, ended as of December 27, 2012, and that leave could not have included any days thereafter.  So, any 2013 absences would be covered, if at all, only under a new FMLA leave of absence, and Nexteer was required to re-evaluate Fox's FMLA eligibility for that new leave. *See* 29 C.F.R. § 825.110(d) ("The determination of whether an employee meets the hours of service requirement . . . must be made as of the date the FMLA leave is to start").

Fox relies on the Sixth Circuit's decision in *Davis v. Michigan Bell Tel. Co.*, 543 F.3d 345 (6th Cir. 2008) to support her "no-right to re-evaluate" argument. (*See* Pl.'s Resp. Br., ECF #22 at Pg. ID 631.)  This reliance is misplaced.  The court in *Davis* focused on the point at which an employer may determine eligibility for intermittent FMLA leave, *see Davis*, 543 F.3d at 350-53, and its decision turned, in part, on the "concept of intermittent leave." *Id*. at 351.  *Davis* does not address when or whether an employer may determine eligibility for non-intermittent leave like that at issue in this case.

the Court does not believe that he did[8]), Fox has not presented any evidence that his error was deliberate.[9]

Third, Fox has not presented any evidence that Getgood "deliberately" failed to give her an eligibility notice after conducting the re-evaluation of her FMLA eligibility in January 2013. Getgood received the request to "update [Fox's] FMLA" from Moore, and Getgood promptly responded to Moore in writing that Fox was not eligible to take FMLA leave at that time. (*See* Getgood email to Moore, ECF #21-8 at Pg. ID 505; Getgood Dep. at 38-40, ECF #21-8 at Pg. ID 497.) Thus, Getgood provided written information concerning Fox's eligibility through the same medium that Fox used to seek that information. Even if Getgood's response to Moore did not strictly comply with the FMLA's notice requirements, it was not a "deliberate" failure to provide the required eligibility information, as Fox contends.

---

[8] Nexteer has presented evidence that Fox did not work 1,250 hours in the preceding twelve months (*see* Getgood Dep. at 38-40, ECF #21-8 at Pg. ID 497; Fox Time Card, ECF #21-8 at Pg. ID 506.), and Fox has not presented any evidence to the contrary. Thus, Fox was not eligible for FMLA benefits in January 2013. *See* 29 U.S.C. § 2611(2)(A)(ii); 29 C.F.R. § 825.110(a)(2).

[9] As noted above, a plaintiff may "prove willfulness" by showing that a defendant acted with "reckless disregard of the FMLA's requirements." *Katoula*, 557 Fed. App'x at 498. Fox does not focus on recklessness. Rather, she contends that Getgood's alleged FMLA violations were "deliberate." For the reasons explained above, the Court disagrees. The Court adds that the evidence identified by Fox also fails to establish that Getgood recklessly violated the FMLA in 2013.

In short, Fox has not presented sufficient evidence to create a material factual dispute as to whether Nexteer (through Getgood or otherwise) willfully interfered with her FMLA rights. Accordingly, Fox's FMLA interference claim is subject to the FMLA's two-year statute of limitations, 29 U.S.C. § 2617(c)(1), and is time-barred under that statute.

## C

### 1

Fox's FMLA retaliation claim fails on the merits.[10] Fox attempts to prove her retaliation claim using circumstantial evidence alone. Therefore, the Court evaluates the claim using the *McDonnell-Douglas* burden-shifting framework. *See Bryso*n, 498 F.3d at 570 (6th Cir. 2007) (applying *McDonnell-Douglas* framework to FMLA retaliation claim because plaintiff relied only upon circumstantial evidence)**.**

Under this framework, Fox bears the initial burden of establishing a *prima facie* case of FMLA retaliation. *See Ferrari v. Ford Motor Company*, 826 F.3d 885, 897 (6th Cir. 2016). To establish her *prima facie* case, Fox "must show that (1) [she] engaged in activity protected by the FMLA; (2) [Nexteer] knew that [she] was exercising FMLA rights; (3) [she] suffered an adverse employment action; and (4) that there was a causal connection between the protected FMLA activity and the

---

[10] Nexteer argues that Fox's FMLA retaliation claim is time-barred, but the Court chooses to proceed directly to the merits of the claim.

adverse employment action." *Id.* "A plaintiff's burden in establishing a *prima facie* case is not intended to be an onerous one." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) (citing *Christian v. Wal–Mart Stores, Inc.,* 252 F.3d 862, 870 (6th Cir. 2001).)

If Fox satisfies her burden to establish a *prima facie* case of retaliation, "the burden shifts to [Nexteer] to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Bryson*, 498 F.3d at 570. If Nexteer provides such a reason, "the burden shifts back to [Fox] to show that [Nexteer's] proffered reason is a pretext for unlawful discrimination." *Id.*

The Court will assume that Fox has established a *prima facie* case of retaliation. And the Court concludes that Nexteer has offered a legitimate, non-discriminatory reason for firing Fox – her accumulation of too many points under the Attendance Policy. *See Norton v. LTCH*, 620 Fed. App'x 408, 412 (6th Cir. 2015) (stating that excessive absenteeism is a legitimate, non-discriminatory reason to terminate employment). For the reasons explained below, Fox has failed to show that Nexteer's reason was a pretext for FMLA discrimination.

## 2

To demonstrate pretext, Fox "must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc)

(emphasis in original) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  Stated another way, she must "present evidence from which a reasonable jury could find" that "unlawful retaliation in fact was" the employer's real reason for taking the adverse action. *Id.*  She has not done so.

Fox offers a perfunctory analysis of pretext that consists of two short paragraphs containing arguments that are unsupported by a citation to any case law. (*See* Pl.'s Resp. Br., ECF #22 at Pg. ID 639-40.)[11]  Fox first argues that this Court can infer pretext from "Denny Getgood['s] fail[ure] to take into account any documentation which may have excused [her January] absences." (*Id.* at Pg. ID 640.) As support for this assertion, Fox cites pages 47-49 of Getgood's deposition transcript. (*See id.*)  On those pages, Fox's counsel asked Getgood whether he independently reviewed MetLife's determination that Fox failed to present sufficient proof of disability for the January dates. (*See* Getgood Dep. at 47-49, ECF #21-8 at 498-99.)  Getgood said that he did not do so because MetLife administers Nexteer's short-term disability plan and "is the sole individual that makes the approval or denial for sick leave claims." (*Id.* at 48, ECF #21-8 at 498.)  Getgood added that he

---

[11] The pretext section of Fox's response consists of more than two paragraphs, but the other paragraphs state the framework for showing pretext and offer a summary. (*See* Pl.'s Resp. Br., ECF #22 at Pg. ID 639-40.)  The substance of the pretext argument appears in two paragraphs.

has never "questioned MetLife in any other employee situation." (*Id.* at 50, ECF #21-8 at 499.)

Getgood's testimony does not support a finding of pretext. There is nothing suspicious about Getgood's decision to leave the administration of the short-term disability plan to the plan administrator. Moreover, Getgood's testimony establishes that he treated Fox's interactions with MetLife in the same manner that he treated all other employees' interactions with MetLife, not in some unusual manner that could potentially support an inference of discrimination.

Fox similarly contends, without citation to the record, that pretext may be inferred from the "lack of clarity as to what information needed to be submitted to MetLife" and from Nexteer's failure to "offer[] … information to assist" her in satisfying MetLife's requests. (*See* Pl.'s Resp. Br., ECF #22 at Pg. ID 640.) But any "lack of clarity" came from MetLife, not Nexteer, and thus does not support a finding that Nexteer's reason for terminating Fox was pretextual. Finally, Fox should not have been surprised that MetLife found her documentation insufficient to support a determination that she was unable to work between January 2, 2013, and January 16, 2013. The letter that Fox submitted from her doctor did not say that she was unable to work. It said only that Fox had needed to re-schedule her original appointment. (*See* Doctor's Letter, ECF #21-5 at Pg. ID 453.) Nothing about Fox's dealings with MetLife supports an inference of pretext against Nexteer.

Fox next asserts that the Court may infer pretext from the fact that Getgood (1) wrongfully re-evaluated her FMLA eligibility in January 2013, (2) chose to assess attendance points against her when MetLife did not approve short-term disability leave for the January absences, and (3) made the decision to terminate her employment. (*See* Pl.'s Resp. Br., ECF #22 at Pg. ID 640.) But Fox offers no reasoning or analysis to support this naked assertion. (*See id.*) Moreover, as explained above, Getgood properly re-evaluated Fox's FMLA eligibility in January 2013. (*See* footnotes 7 and 8, *supra*.) Likewise, Getgood fairly assessed attendance points against Fox for her January absences once MetLife determined that she was not entitled to short-term disability leave. Given MetLife's determination, there was no basis on which the absences could have been exempt from the assessment of attendance points. And once Getgood properly assessed the points, Fox was properly subject to termination because she far exceeded the number of points allowed under Nexteer's Attendance Policy.

Finally, Fox argues that the "close proximity" between her termination and her exercise of FMLA rights is sufficient to establish pretext. (*See* Pl.'s Resp. Br. at Pg. ID 640-41.) But the United States Court of Appeals for the Sixth Circuit has made clear that "temporal proximity . . . alone cannot demonstrate pretext." *Williams v. AT&T Mobility Services LLC.*, 847 F.3d 384, 396 (6th Cir. 2017) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012)). Fox attempts to supplement her

temporal proximity argument with the allegation that Nexteer treated "her differently after her return from FMLA leave." (Pl.'s Resp. Br. at Pg. ID 640-41.)  But she cites no evidence in support of this allegation of disparate treatment. (*See id.*)

No reasonable juror could find that Nexteer's proffered reason for terminating Fox was pretext for unlawful FMLA retaliation.  Therefore, Fox's FMLA retaliation claim fails as a matter of law.

## IV

The ELCRA makes it unlawful for an employer "to discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment" because of the individual's sex. M.C.L. § 37.2202(a).  Discrimination on the basis of sex "includes, but is not limited to" discrimination on the basis of "pregnancy, childbirth, or a medical condition related to pregnancy or childbirth." M.C.L. § 37.2201(d).  The ELCRA also makes it unlawful for an employer to treat an "individual affected by pregnancy, childbirth, or a related medical condition differently for any employment-related purpose from another individual who is not so affected but similar in ability or inability to work." M.C.L. § 37.2202(d).

In her Amended Complaint, Fox alleges that Nexteer violated the ELCRA by discriminating against her on the basis of sex and because of her pregnancy.  Fox's ELCRA claim relies exclusively on circumstantial evidence.  Therefore, the Court

evaluates the ELCRA claim using the *McDonnell-Douglas* burden-shifting framework. *See Sniecinski v. Blue Cross and Blue Shield of Michigan*, 666 N.W.2d 186, 193 (Mich. 2003).

"To establish a *prima facie* case of discrimination under the ELCRA, [Fox] must show (i) that she is a member of a protected class, (ii) that she was subject to an adverse employment decision, (iii) that she was qualified for the position, and (iv) that she was discharged or otherwise adversely treated 'under circumstances that give to an inference of unlawful discrimination.'" *Miller v. CVS Pharmacy*, 779 F.Supp.2d 683, 692 (E.D. Mich. 2011) (quoting *Lytle v. Malady,* 579 N.W.2d 906, 914 (Mich. 1998)). For purposes of its motion, Nexteer does not dispute that Fox has established the first three elements of her *prima facie* case of ELCRA discrimination. However, Nexteer contends that Fox has failed to establish the fourth element. The Court agrees.

Fox offers the following argument as to how the evidence here shows a nexus between her pregnancy and her termination and otherwise supports an inference of pregnancy discrimination:

> In the current action, Defendant wrongfully disciplined Plaintiff for failing to return on January 2, 2013. Plaintiff, as the facts state, was experiencing *complications* during her attempt to receive medical clearance after her pregnancy. She sought additional time to gain the proper clearance to return to work, but was unjustifiably denied both FMLA and sick time to do so. Defendant then assessed points and terminated Plaintiff over those

> absences. Nexteer's assessment of points and resulting
> adverse employment action, Plaintiff's termination, are
> directly related to a *medically necessitated absence*
> stemming from Plaintiff's pregnancy.

(Pl.'s Resp. Br., ECF #22 at Pg. ID 637-38; emphasis added.)

There are three flaws in this argument. First, as described above, Nexteer properly declined to grant Fox FMLA leave for her January absences because she was not then eligible for FMLA benefits. (*See* footnotes 7 and 8, *supra*.) Second, Fox has not presented any evidence that MetLife unjustifiably denied Fox short-term disability leave for the January absences. Fox never submitted any documentation stating that she was, in fact, medically unable to work on the days in question. Finally, the "complications" and "necessitated absence" that Fox experienced were *not* due to her pregnancy. Instead, they were due to the difficulty she had scheduling an appointment with her doctor over the holiday period to obtain a return-to-work note. Nexteer required every employee returning from disability leave to obtain such a note from a physician. (*See* Moore Dep. at 43-45, ECF #21-7 at Pg. ID 484-85; Getgood Dep. at 35, ECF #21-8 at Pg. ID 496.) That Nexteer held Fox to this same generally-applicable requirement is not evidence of pregnancy discrimination or discrimination on the basis of sex. For these reasons, Fox's evidence is insufficient to satisfy the fourth element of her *prima facie* case under the ELCRA.

Finally, even if Fox had established a *prima facie* of ELCRA discrimination, Nexteer would still be entitled to summary judgment on that claim because, as

described above, it has offered a legitimate non-discriminatory reason for her termination – her accumulation of too many points under the Attendance Policy – and she has failed to show pretext. (*See* Section III-C-2 *supra*.)

## V

For the reasons stated above, **IT IS HEREBY ORDERED** that Nexteer's motion for summary judgment (ECF #13) is **GRANTED.**

                                        s/Matthew F. Leitman
                                        MATTHEW F. LEITMAN
Dated:  May 31, 2017                    UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 31, 2017, by electronic means and/or ordinary mail.

                                        s/Holly A. Monda
                                        Case Manager
                                        (313) 234-5113